IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JASON BAYLESS ALBERTSON,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER SETTING RESTITUTION PAYMENT SCHEDULE**<br><br>Case No. 2:10-cr-00538-TC<br><br>Judge Tena Campbell |

Before the court is the government's motion to amend the manner and schedule of payment according to which Defendant Jason Bayless Albertson is required to pay restitution. (ECF No. 100.)  For the following reasons, the court grants the government's motion in part. The court sets an amended payment schedule but agrees with Mr. Albertson that $150 per month is a reasonable monthly payment.

## BACKGROUND

On November 16, 2010, Mr. Albertson pled guilty to bank fraud under 18 U.S.C. § 1344 and aggravated identity theft under 18 U.S.C. § 1028A.  (See Statement in Advance of Plea, ECF No. 12.)  The court sentenced Mr. Albertson to 48 months in the custody of the Bureau of Prisons, followed by 60 months of supervised release.  (Judgment, ECF No. 19 at 2–3.)  The court ordered Mr. Albertson to pay restitution in the amount of $12,478.66,[1] according to the following repayment schedule: "$10.00 per month while incarcerated ….  Upon release from imprisonment, payments will be made at a minimum rate of $100 per month or as otherwise

---

[1] The court also ordered a Special Assessment of $200, due immediately.  (ECF No. 19 at 5, 7.)

determined by the U.S. Probation Office." (Id. at 5–7.)  The court waived interest on the restitution award.  (Id. at 5.)

Although Mr. Albertson was released from custody in 2017, it does not appear that the government attempted to collect restitution payments for several years.  It also does not appear that Mr. Albertson made any payments.  The United States asserts, and Mr. Albertson does not dispute, that Mr. Albertson has only made one payment—an involuntary payment for $998.96 made through the Treasury Offset Program on February 22, 2024—since his release from custody.  (ECF No. 100 at 2.)

The government also maintains that, in the summer of 2024, the United States Attorney's Office for the District of Utah sent Mr. Albertson a letter and later a subpoena requiring him to complete a Financial Statement with supporting documentation.  (Mot. Order to Show Cause, ECF No. 82 at 2.)  After some problems with service, Mr. Albertson eventually received that subpoena on September 13, 2024.  (Id.)  When Mr. Albertson failed to respond to the subpoena by October 9, 2024, the United States moved the court for an order requiring Mr. Albertson to appear and show cause why he should not be held in contempt for failing to comply with the subpoena.  (Id. at 1.)

The court appointed a public defender to represent Mr. Albertson in these proceedings. (Dkt. Text Order, Nov. 12, 2024, ECF No. 84.)  Mr. Albertson and his counsel then moved for several extensions to continue the written response deadline to the government's motion.  (See Mots. to Continue, ECF Nos. 88, 90, 92, 94.)  Mr. Albertson finally responded on April 17, 2025.  (Def.'s Resp., ECF No. 96.)  In that response, he stated that he had been unable to produce all the requested documents and requested a hearing to explain why he had been unable to do so.  (Id.)

The court held a hearing on April 30, 2025. (Min. Entry, ECF No. 99.) At the hearing, the government provided a list of documents that remained outstanding. These documents included 1) a paystub from September 2024; 2) a rent statement; 3) utility statements; 4) several bank statements from the previous two years; 5) tax returns for the past three years; 6) the title and registration for two vehicles; and 7) a statement about court-ordered payments from a state court case.

Mr. Albertson responded that he has had difficulty compiling these documents because he and his family have been somewhat transient during the past few years. Mr. Albertson, his wife, and their son are currently living with Mr. Albertson's father-in-law while they make plans to purchase a trailer where they can live independently. Mr. Albertson was in a motorcycle accident in 2017 that resulted in the amputation of his left leg. He also has severe asthma, which has limited his ability to perform manual labor. Finally, Mr. Albertson's son is severely autistic and requires full-time care from Mr. Albertson's wife, who has been unable to work as a result. Mr. Albertson also stated that he no longer owned one of the vehicles and that he could not locate his tax returns because he filed them on paper.

The court directed Mr. Albertson to provide the outstanding items to the best of his ability and then ordered the United States to submit a proposed payment plan. To the extent that there were gaps remaining in the financial information that Mr. Albertson provided, the court instructed the United States to explain how any uncertainty about those outstanding items should affect the payment plan. (See id.)

In its motion to amend Mr. Albertson's payment schedule, the United States calculates that Mr. Albertson has a monthly income of approximately $3,241.84 and monthly expenses of $1,575. (ECF No. 100 at 3.) Attaching a note from Mr. Albertson's father-in-law stating that

Mr. Albertson's family currently pays no rent while they "get on [their] feet," the government has not included any rent or utilities expenses in its calculations. (Letter re: Rent, Ex. B to Gov't Mot., ECF No. 100-2.) Based on its calculation that Mr. Albertson has $1,666 in remaining income after expenses,[2] the government requests that Mr. Albertson be ordered to pay $800 per month. (ECF No. 100 at 4.)

In his response, Mr. Albertson includes expenses for rent and utilities. (See Def.'s Resp., ECF No. 101 at 1.) He maintains that he earns approximately $3,000 per month and has necessary expenses totaling $2,810 per month, leaving only around $200 in additional income. (Id.) He requests that the court order him to pay only $150 per month. (Id. at 2.)

## LEGAL STANDARD

The statute governing the procedure for the issuance and enforcement of an order of restitution is 18 U.S.C. § 3664. First, the court determines the amount of restitution owed: "In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." Id. § 3664(f)(1)(A). Any dispute about this amount shall be resolved by the court by the preponderance of the evidence and "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." Id. § 3664(e).

After determining the amount of restitution owed, the statute permits the court wide latitude in structuring how a defendant must pay that restitution. For instance, the court may

---

[2] The government cites a higher figure, stating that Mr. Albertson has $1,716 in income after expenses. (ECF No. 100 at 4.) But the court finds that this calculation is in error based on the table provided, which shows $1,575 in monthly expenses rather than $1,525 in monthly expenses. Accordingly, the correct figure is $1,666 in remaining income after expenses.

"direct the defendant to make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments." Id. § 3664(f)(3)(A). But the court must consider the defendant's financial circumstances when determining an appropriate repayment plan. See id. § 3664(f)(2); see also United States v. Wilson, 416 F.3d 1164, 1170 (10th Cir. 2005) ("The defendant's economic circumstances are relevant in fixing a payment schedule."). Specifically, the statute instructs the court to consider:

> (A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;
>
> (B) projected earnings and other income of the defendant; and
>
> (C) any financial obligations of the defendant; including obligations to dependents.

18 U.S.C. § 3664(f)(2).

To allow the court to assess the defendant's financial circumstances, the statute requires the defendant to

> prepare and file with the probation officer an affidavit fully describing the financial resources of the defendant, including a complete listing of all assets owned or controlled by the defendant as of the date on which the defendant was arrested, the financial needs and earning ability of the defendant and the defendant's dependents, and such other information that the court requires relating to such other factors as the court deems appropriate.

Id. § 3664(d)(3). "The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant." Id. § 3664(e).

The statute also allows the court to adjust a defendant's payment schedule after it has been notified[3] of a change in the defendant's economic circumstances: "Upon receipt of the

_____

[3] The defendant is required to notify the court and the Attorney General of any material change in their economic circumstances, but "the court may also accept notification of a material change

notification, the court may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require." Id. § 3664(k).

## ANALYSIS

### A. Motion for Order to Show Cause

The court notes that the government's motion for an order to show cause remained unresolved at the close of the April 30, 2025 hearing. The court ordered Mr. Albertson to provide the outstanding documents to the extent possible. Neither party informed the court what additional efforts Mr. Albertson made to comply with the court's order.

But on the basis of the information provided to the court at the hearing, the court finds that Mr. Albertson substantially complied with the subpoena and that there is no basis to find him in civil contempt. While there were gaps in the record that Mr. Albertson provided, his documents nevertheless demonstrated the basic contours of his financial situation. For instance, he supplied W-2 forms for three years even though he did not have copies of his tax returns, which he had filed on paper. He provided several paystubs and Chime statements, though not a complete record. And he provided car insurance statements, even though he did not provide the title and registration for his remaining vehicle. Although not perfect, this information is sufficient to understand Mr. Albertson's general finances.

While the government may seek a finding of contempt where a defendant does not comply with a subpoena requesting financial information,[4] the ultimate purpose of the subpoena

_____

in the defendant's economic circumstances from the United States or from the victim." 18 U.S.C. § 3664(k).

[4] To collect restitution debts, the United States must act "in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law." 18 U.S.C. § 3613(a). The Federal Debt Collection Procedures Act (FDCPA), 28 U.S.C. §§ 3001–15,

in this matter is to provide the government with sufficient information to propose an appropriate payment schedule for Mr. Albertson. It took several months to gather that information, which was admittedly incomplete, but the court finds no indication that Mr. Albertson acted in bad faith or intentionally delayed his responses.[5] And there is no evidence that Mr. Albertson has additional assets that he has not disclosed.

The court therefore terminates as moot the government's motion for an order to show cause.

### B. Motion to Amend the Manner and Schedule of Restitution Payments

Turning to the question of the appropriate payment schedule, the parties do not dispute the basic facts about Mr. Albertson's financial situation. Both parties agree that Mr. Albertson earns approximately $40,000 a year and that his wife is unable to work because their son requires constant care. The parties disagree, however, about whether the payment schedule should

---

provides the "exclusive civil procedures for the United States to recover a judgment on a debt[.]" 28 U.S.C. § 3001(a). The FDCPA authorizes the United States to "have discovery regarding the financial condition of the debtor in the manner in which discovery is authorized by the Federal Rules of Civil Procedure in an action on a claim for a debt." 28 U.S.C. § 3015(a). The Federal Rules of Civil Procedure, in turn, authorize a judgment creditor to obtain discovery from a judgment debtor, see Fed. R. Civ. P. 69(a)(2), and to issue subpoenas commanding a party to produce documents and other information. See Fed. R. Civ. P. 45(a)(1)(D). Rule 45 further provides that the court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g).

[5] The court notes that, where the government faces a recalcitrant defendant, the government may avoid extensive discovery motions in some cases by simply proposing a payment schedule to the court, explaining why the defendant's failure to comply with the subpoena indicates the presence of additional assets, and asking the court to draw any inferences against the defendant unless the missing documentation is provided. It is, after all, the defendant's burden to demonstrate their financial resources when the court orders the initial payment plan for a restitution order, see 18 U.S.C. § 3664(e), and the court finds no indication that this burden is shifted after the government has demonstrated a material change in the defendant's circumstances and the court is considering an amended payment plan. See 18 U.S.C. § 3664(k). To the extent a defendant seeks to avoid immediate payment in full of the outstanding restitution amount, the defendant must demonstrate why they would be unable to pay such an amount.

account for expenses that Mr. Albertson cites for rent and certain utilities.  The government

asserts that, because Mr. Albertson and his family are currently living rent-free with Mr.

Albertson's father-in-law, he can afford to pay $800 per month in restitution.

The court finds that the government's suggested payment plan is unreasonable.  Even

drawing all inferences against Mr. Albertson and assuming that he can continue to live rent-free

with his father-in-law for several years,[6] it would be nearly impossible for Mr. Albertson to

afford $800 monthly payments while earning his current salary and caring for his son.  These

payments would represent approximately 25% of his total income.  And while the court must

consider the interests of Mr. Albertson's victims in receiving timely repayment for their losses,

an appropriate payment schedule should still allow Mr. Albertson to care for his son and to take

steps towards living independently with his family.

The court finds that the initial payment schedule in the court's restitution judgment—for

$100 per month—is far more reasonable.  But it is also reasonable to adjust this amount upward

to account for the number of years during which Mr. Albertson made no payments.  While it is

unclear why the government has not previously sought to enforce the restitution order against

him, it is undisputed that Mr. Albertson has not made the ordered restitution payments since his

release from custody.  The court therefore finds that Mr. Albertson's suggested payment

schedule, for $150 per month, is appropriate.

Mr. Albertson currently owes approximately $11,700.  Because the court did not order

interest on this amount, Mr. Albertson will be able to pay the full restitution amount within

---

[6] Mr. Albertson maintains that he is saving money to buy a trailer site where he and his family
may live independently.  (ECF No. 101 at 2.)

6.5 years.  Such a period of time is not unduly excessive and adequately balances the victims'

need for compensation against Mr. Albertson's ability to pay.

### ORDER

For the foregoing reasons, the court ORDERS as follows:

1.      The government's Motion for Order to Show Cause (ECF No. 82) is

TERMINATED AS MOOT.

2.      The government's Motion to Amend the Manner and Schedule of Payment of

Restitution (ECF No. 100) is GRANTED IN PART.

3.      The manner and schedule of Defendant Jason Bayless Albertson's restitution

payment is amended to $150.00 per month, with the first payment due on September 1, 2025,

and subsequent payments due on the first of the month thereafter.  This payment schedule is

subject to modification upon notice to the court that Mr. Albertson has had a material change in

his economic circumstances that might affect his ability to pay restitution.

4.      The Defendant shall immediately notify the court and the United States

Attorney's Office for the District of Utah of any material change in his economic circumstances

that might affect his ability to pay restitution.

DATED this 8th day of August, 2025.

BY THE COURT:

Tena Campbell
United States District Judge